**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

CURTIS SCHIPPER,

      Plaintiff,

    v.

BNSF RAILWAY COMPANY,          Case No. 07-2249-JWL

      and

MICHAEL MORGAN,

      Defendants.
_____

**MEMORANDUM AND ORDER**

This case arises out of a motorcycle-automobile collision between two student engineers of BNSF Railway Company ("BNSF") in the Extended Stay American hotel parking lot in Overland Park, Kansas on July 10, 2005.  Defendant BNSF filed a Motion for Summary Judgment based on the view that the Federal Employer's Liability Act ("F.E.L.A.") does not apply, so it is not liable. (doc. 47)  Defendant Michael Morgan filed a Motion for Summary Judgment alleging that F.E.L.A. does apply, so the common law negligence claim against him is precluded.  (doc. 55)  Last, Plaintiff Curtis Schipper filed a Motion for Partial Summary Judgment on the basis that F.E.L.A. applies to this case and that actions at issue constitute negligence per se.  (doc. 63)  For the reasons discussed below, all three motions are denied.

1

## SUMMARY JUDGMENT STANDARD[1]

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir.2008) (citing *Scott v. Harris*, 17 S.Ct. 1769, 1774 (2007)). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir.2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Libertarian Party v. Herrera*, 506 F .3d 1303, 1309 (10th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

---

[1] Plaintiff and both defendants have all filed motions for summary judgment. The court will address the motions together. The legal standard does not change if the parties file cross-motions for summary judgment. Each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *Atlantic Richfield Co. v. Farm Cr. Bank*, 226 F.3d 1138, 1148 (10th Cir.2000).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir.2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

## FACTS

Plaintiff Curtis Schipper first became an employee of BNSF in December 1980. He was a conductor for BNSF prior to becoming a student engineer.   In March 2005, he began to attend the BNSF student engineer program at Johnson County Community College.  On July 10, 2005 he arrived in Overland Park, Kansas.  He came to Kansas to attend the BNSF student engineer program.  BNSF compensated him in the amount of $455.00 for his travel from Winslow, Arizona where he resides to Overland Park, Kansas where the hotel is located.  BNSF also gave him a $25 per diem, beginning on Sunday, July 10, 2005.  He also was paid a daily rate of $130 for six days per week by BNSF. He

said that the students were instructed to show up on Sunday afternoon after 2p.m. but before 8 or 9p.m.

Mr. Michael Morgan became a BNSF employee in 1992.  On July 10, 2005 he arrived in the Overland Park, Kansas area around 6:45pm at the Extended Stay America hotel also to check in and get ready to attend BNSF's  Locomotive Engineer Training Program classes.  He drove his wife's car from Wichita Falls, Texas to Overland Park. He was compensated in the amount of $402.57 for his travel and given a $25 per diem to cover food and other incidentals.  His per diem also started on Sunday July 10, 2005.

BNSF provided the lodging at the Extended Stay America hotel. There was a contract between BNSF and the hotel that the hotel would provide rooms at a rate of $34 for 2005 and that BNSF would pay for those rooms.   The contract between BNSF and Extended Stay America reveals that the hotel agreed to send all billings to BNSF in care of IML (which processes BNSF's bills), and IML would reimburse the hotel upon receipt of payment from BNSF.  The hotel agreed to indemnify and hold harmless IML and BNSF from all liability from injury or death while on the hotel's premises or in the hotel's care.   The contract specifically states that "THE INDEMINIFICATION OBLIGATION ASSUMED BY [the hotel] SHALL INCLUDE ANY CLAIMS, SUITS OR JUDGMENTS BROUGHT AGAINST THE RAILROAD UNDER THE FEDERAL EMPLOYER'S LIABILITY ACT . . . WHENEVER SO CLAIMED."  Also, the "20 Week Locomotive Training Manual," received by the students as part of a packet of information for the training, stated that a room at the hotel was reserved in the trainee(s)'

name with the reservation beginning the Sunday night before the training class began on Monday.  BNSF requested that the trainees not contact the hotel unless they planned to check in on Monday.  Mr. Warren Scholl, a locomotive engineer instructor, testified that it is possible that some training students do not have to stay at the company provided lodging, for example, if they live in the area.

BNSF also stated in its training manual under the section "lodging" that "BNSF employees are expected to conduct themselves in a manner consistent with GCOR 1.6 and 1.9," which are BNSF internal safety rules relating to employee conduct. *See infra* note 5 for language. Mr. Morgan and Mr. Schipper understood that the railroad employees were to conduct themselves as representatives of the railroad while they were at the hotel.  The students were told by the instructors how to conduct themselves at the hotel.  Mr. Darrell Marks, a conductor for BNSF assigned to the same hotel as Mr. Schipper for the locomotive engineering program, also understood that while on hotel property, the railroad expected him to follow the rules, policies, and regulations.  Mr. Scholl testified that employees are expected to act professionally as if they were on company property even if they were not staying at company provided lodging, and in fact, the employees should act responsibly wherever they go.

Mr. Schipper traveled to the hotel with Tim Blondell, also a student engineer from Winslow, Arizona.  They went to the hotel assigned to them by BNSF.  Mr. Blondell said they arrived at the hotel on Sunday to "get familiar with the area and get [his] belongings put away."  When Mr. Schipper checked into the hotel, he was told where the parking lot

was and the areas in which he could park.  The "idea" was that the parking location would be near his room location, but he selected the parking spot himself.  Mr. Schipper and Mr. Blondell had driven a truck.  They towed Mr. Blondell's motorcycle and carried Mr. Schipper's motorcycle in the bed of the truck.  Mr. Schipper was planning on using the motorcycle on the weekends, to visit his mother in Quincy, Illinois during his three week stay in Kansas City, and go back and forth to class.

BNSF admitted in the plaintiff's request for admissions that the incident at issue in this case occurred while Mr. Morgan and Mr. Schipper were checking into the hotel.  Mr. Schipper checked into his room at the hotel on July 10, 2005 after he parked his truck, which ended up being in a spot south of his room.  He took some of his property into the motel room.  Mr. Schipper and Mr. Blondell then dropped the trailer from the pickup and then unloaded Mr. Schipper's motorcycle from the truck.  He rode the bike from the top of the hill down towards where he was going to park it, which was near his room.

Mr. Morgan was operating his vehicle in reverse out of a parking space in the hotel parking lot.  His car collided with Mr. Schipper on his motorcycle.  Mr. Schipper was coasting on his motorcycle down the hill with the engine off, moving it from the back of his truck to another parking space when the collision occurred.  Mr. Morgan noticed there was an accident when he felt a little bump after moving three to four feet. He was not looking behind him, but he was using his mirrors. Mr. Schipper testified that he was performing his duties as instructed at the time of the incident.

Mr. Morgan spoke with other BNSF employees in the classroom about the incident, but no management officials ever asked him about the facts of the situation. Mr. Schipper received and signed instructions for "Non-Reportable Injury Follow-up Instructions." It is dated July 11, 2005. He testified that he completed the paperwork given to him by the BNSF official, but he does not remember filling out a personal injury accident report reporting an on-the-job injury but does remember filling out an incident report.Mr. Morgan was never charged with any rule violation, nor did he anticipate any disciplinary action in relation to the accident. Mr. Larry Hunter, a locomotive engineer instructor for BNSF railroad, has no recollection of the accident, and Mr. Schipper did not report anything to him about the accident. Mr. Scholl, another instructor, also testified that he had no recollection of any investigation or any type of company actions regarding the motor-vehicle accident.

Mr. Marks testified that he did not witness the July 2005 accident, but he was Mr. Schipper's roommate for about six months beginning in October 2005. He testified that Mr. Schipper complained to him about hip pain and that he went in for hip surgery while they were roommates.

### ANALYSIS

All parties have filed summary judgment motions. The underlying issue as to all the motions is the applicability of F.E.L.A., which is based on whether the injury occurred while the individuals were acting within the scope of their employment. The court, therefore, discusses this issue as to all the motions within one section.

### 1.    F.E.L.A. Standard

Mr. Schipper has brought a negligence claim against BNSF under F.E.L.A., "which imposes liability on a railroad company when its negligence, or that of its employees or agents, results in injury to an employee." *Chaffin v. Union Pacific R. Co.*, 192 Fed.Appx. 739, 2006 WL 2361614 (10th Cir. Aug. 16, 2006) (citing 45 U.S.C. § 51).[2]   "The FELA does not make an employer the insurer of its employees' safety. Rather, the basis of liability under the FELA is negligence, not that an injury occurred." *Johnson v. Atchison, Topeka and Santa Fe Ry. Co.*, 953 F.2d 1391, 1992 WL 14936 (10th Cir. Jan. 28, 1992) (table opinon) (citing *Ellis v. Union Pac. R.R.*, 329 U.S. 649, 653 (1947)). "'[T]he existence of negligence under FELA is a federal question which generally turns on principles of common law.'" *Chaffin*, 2006 WL 2361614, at *7 (citing *Smith v. Union Pac. R.R. Co.*, 236 F.3d 1168, 1172 (10th Cir. 2000)).   "Those common law elements 'include duty, breach, foreseeability, and causation.'" *Id.* (citing *Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059, 1062 (7th Cir. 1998)).

### 2.    Scope of Employment

---

[2] Chapter 45, section 51, United States Code sets forth the basis for a FELA claim:

> Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

Mr. Schipper seeks recovery on the theory that BNSF is liable for Mr. Morgan's alleged negligence. *See generally Sinkler v. Missouri Pac. R.R. Co.*, 356 U.S. 326, 329 (1958) (discussing the unitary enterprise of the railroad created by F.E.L.A. and noting that "a railroad worker may recover from his employer for an injury caused in whole or in part by a fellow worker. . ."). In order to prevail on his claim, Mr. Schipper must not only prove the negligence elements but also that he and Mr. Morgan were acting within the scope of their employment when the injury occurred.  BNSF argues that these acts were outside the scope of their employment, so F.E.L.A. does not apply as a matter of law. Mr. Schipper argues that the injury did occur within the scope of their employment.  Mr. Morgan also argues that F.E.L.A. applies to this case as a matter of law, and further states that as a result, the common law negligence claims against him should be barred.

To hold a railroad company liable for negligence, a plaintiff must prove that the employees involved were acting within the scope of their employment at the time of the injury.

> Recovery under the FELA is . . . permitted only if the employee's injury occurred while he was employed by the railroad, which in turn requires a showing that "the plaintiff was injured in the scope of his employment." *Smith v. Medical & Surgical Clinic Ass'n*, 118 F.3d 416, 419 (5th Cir.1997). Railroad employment has been broadly interpreted to extend not only to acts required by the employer, but also to those acts necessarily incidental to the employment. *See, e.g.*, *Rostocki v. Consolidated Rail Corp.*, 19 F.3d 104, 106 (2d Cir.1994) (FELA covers injuries suffered during activities necessarily incidental to employment); *Wilson v. Chicago, Milwaukee, St. Paul, & Pac. R.R.*, 841 F.2d 1347, 1355 (7th Cir.1988) (act could be within scope of employment if a necessary incident of the day's work).

*Feichko v. Denver & Rio Grande Western R. Co.*, 213 F.3d 586 (10th Cir. 2000).  "Under the FELA, not only must the *injured employee* be acting within the scope of employment at the time of injury, *see, e.g.*, *Schneider v. National Railroad Passenger Corp.*, 854 F.2d 14 (2d Cir. 1988), but the *employee whose conduct causes the injury* must also be acting within the scope of his employment."  *Gallose v. Long Island R.R. Co.*, 878 F.2d 80, 83 (2d Cir. 1989).  "Thus, under the FELA employers are liable for the negligence of their employees only if it occurs within the scope of employment, and no liability attaches when an employee acts 'entirely upon his own impulse, for his own amusement, and for no purpose of or benefit to the defendant employer.'"  *Id.* (citing *Copeland v. St. Louis-San Francisco Railway Co.*, 291 F.2d 119, 120 (10th Cir. 1961)).

Often, when a railroad company has provided company lodging, the hotel is an agent of the railroad and the railroad is responsible for the negligent conditions of the lodging.  *See Mostyn v. Delaware, L & W R. Co.*, 160 F.2d 15, 16 (2d Cir. 1947) (Mostyn housed in bunk cars infested with vermin, so he slept outside the car and a railroad car rolled over his foot; court affirmed jury verdict that railroad was liable for negligence where two supervisors suggested that he sleep outside and the railroad provided the unclean shelter); *Empey v. Grand Trunk Western R. Co.*, 869 F.2d 293 (6th Cir. 1989) (railroad paid plaintiff to board at that specific hotel and he was acting within the scope of his employment when he took a shower and slipped on water that accumulated on the floor).  F.E.L.A. also can be applicable to railroad parking lot incidents when traversing the parking lot is a necessary incident to employment.  *See Carter v. Union R. Co.*, 438

F.2d 208 (3d Cir. 1971) (reversing directed verdict for railroad and remanding for new trial where employee injured in unlit and muddy pathway to adjacent parking lot, finding that the employee was within the scope of his employment while "enroute to his very job site," discussing the duty of the railroad to inspect the lot for hazards); *Schneider v. National R. Passenger Corp.*, 854 F.2d 14 (2d Cir. 1988) (holding issues of fact existed as to whether injuries occurred within scope of employment where Amtrak employee was robbed in parking lot after work). While this court agrees that in some circumstances a railroad may be liable for negligence on a third-party's premises, such as at a hotel or parking lot, this case is factually distinguishable and not appropriate for judgment as a matter of law as to the scope of employment.

Mr. Schipper makes no claim that any injury was caused by the hotel or the conditions of the parking lot. This is not a case in which the hotel should have eliminated the condition of water pooling by their showers or where there was something wrong with the premises of the parking lot or hotel, such as poor lighting, that caused an injury or death. The parking lot cases also deal with negligent maintenance (either with regard to security or to the condition of the lot) as the basis for liability. They discuss the necessity of traversing the property after work to a parking lot, whereas here the facts do not deal with merely traversing the parking lot to arrive at or depart from the "actual worksite" or the "very job site," as in *Schneider* and *Carter*. Instead, here, the sole alleged cause of the accident was the movement of Mr. Morgan's car into Mr. Schipper on his motorcycle, not the traversing of a parking lot or of negligent conditions of the

parking lot.   There is no connection to or allegation that the hotel or parking lot conditions caused Mr. Schipper's injury, as was present in the cases cited in the preceding paragraph.  *See generally and cf. Atchison T & S.F.R. Co. v. Wottle*, 193 F.2d 628 (10th Cir. 1952) ("The Company furnished the deceased a bunk for his bedding and a place to cook his food, but it furnished neither the bedding nor the food, and it was his sole responsibility to obtain it. When therefore, after his day's work, he set out in his own car to obtain groceries for himself, he was on a mission wholly unconnected and unrelated to his employment, and his injury while thus engaged cannot be said to be in commerce within the meaning of the Act.").

In addition to pointing to cases that discuss the railroad's liability for conditions of hotel or parking lot premises, Mr. Schipper and Mr. Morgan point to the specific fact that they were checking into the hotel when the incident occurred.  They reason that because they were checking in when the incident occurred, they were at the hotel for the purpose of BNSF's locomotive engineer training, and they received a per diem on Sunday, Mr. Morgan's and Mr. Schipper's actions were necessary or appropriate incidents of employment.  Mr. Morgan and Mr. Schipper are correct that BNSF admitted in plaintiff's request for admissions to the statement that they were checking into the hotel at the time the injury occurred.  There is still a determination, however, of whether the actions of moving vehicles, changing parking locations, and unloading motorcycles from the back of a vehicle and coasting the motorcycle to a parking spot during the course of checking in were necessary incidents to their employment.

This case is more similar to those involving the actions of two employees, rather than cases involving the negligent conditions of a hotel or parking lot.  A determination must be made as to whether the acts engaged in by the railroad's employees that caused the injury were within the scope of employment.  In *Copeland v. St. Louis-San Francisco Railway Co.*, 291 F.2d 119, 120 (10th Cir. 1961), the facts were that "the plaintiff was in the process of balancing a tie on his shoulder and removing it from the car when his fellow employee who was working inside the car, as a practical joke, and as a prank, pushed upward on the back end of the tie."  The court explained that "courts have held that an employer is not liable under the F.E.L.A. for assaults by employees upon fellow employees, which assaults are not committed within the scope of the wrongdoers' employment in furtherance of the master's business."  *Id.* The court affirmed the verdict of the bench trial. *Id.* While there is no evidence of sport, play, or practical jokes in this case, the evaluation of the employees' conduct to determine whether F.E.L.A. applies is applicable here as well.  The issue of negligence arises from Mr. Morgan's and Mr. Schipper's conduct at the time of the injury.  Looking at the evidence of the surrounding circumstances, including the employees' specific conduct at the time the injury occurred, in a light most favorable to the nonmoving party, BNSF, reasonable persons could find that these actions were outside the scope of their employment with the railroad.

The court does not find, however, that BNSF's cross motion should be granted based on these distinguishing factors.  BNSF contends that Mr. Schipper's injuries were not caused by any negligence of the employer or any failure to provide a reasonably safe

place to work, so F.E.L.A. is inapplicable as a matter of law.[3]   BNSF admitted that Mr. Morgan and Mr. Schipper were checking into the hotel at the time of the accident. They were staying at the hotel for the purpose of attending BNSF training the next day.  BNSF had a contract with the hotel, paid for the lodging, paid a per diem for Sunday, and directed the students not to contact the hotel directly except in a few circumstances.  As previously discussed in the context of Mr. Schipper's and Mr. Morgan's argument, there is an issue for the jury to decide from the surrounding circumstances whether BNSF is responsible for the alleged negligence of Mr. Morgan while the two men were moving vehicles during the check in process at the hotel at which they had arrived for a BNSF training program.  Construing the evidence in the light most favorable to the nonmoving parties, a jury could reasonably conclude that Mr. Morgan and Mr. Schipper were acting within the scope of their employment and that the movement of the vehicles was a necessary incident to their employment.

Second, BNSF attempts to liken the facts of this case to those in which courts have found F.E.L.A. is inapplicable under the "commuter exception" rule.   "Generally, employees injured while commuting to and from work are not considered to be within the scope of their employment for FELA purposes." *Loya v. Denver & Rio Grande Western R. Co.*, 993 F.2d 1551 (10th Cir. May 5, 1993).   This case also is distinguishable from

---

[3] In connection with the scope of employment issue, BNSF made an argument that this conduct was not foreseeable to BNSF.  To the extent BNSF alleges this as an argument separate from the scope of employment, such as an element of the negligence claim that should be decided as a matter of law, the court finds that issue also is appropriate for the trier of fact.

cases in which the commuter exception rule was applied. *Cf. id.* (maintenance-of-way worker was returning from permanent home to place of employment when co-worker driving the truck lost control and Mr. Loya died as a result; court affirmed summary judgment because Mr. Loya chose how to travel to his permanent home and there did not exist the level of the railroad's control necessary to be acts incident to employment); *Williams v. Norfolk Southern Ry. Co., Inc.*, 767 F.Supp. 756 (E.D. Va. 1991) (plaintiff railroad worker elected to return home on Amtrak and suffered injuries when Amtrak train collided; commuter exception rule applied because he had ceased his work for the day and chose Amtrak on his own volition—the commute was not part of plaintiff's job). Mr. Morgan and Mr. Schipper had already arrived at the hotel. The cars were already parked, as Mr. Schipper unloaded the motorcycle from his non-moving truck and Mr. Morgan was backing out his car which was already parked. They were on the hotel premises. They were there for the purpose of attending BNSF training classes. Construing this evidence, along with the evidence relating to the relationship of BNSF and the hotel, in the light most favorable to Mr. Schipper and Mr. Morgan, a jury could find that the commute was over and BNSF exercised control such that the commuter exception rule does not apply.

The court finds that reasonable persons could differ on whether Mr. Schipper and Mr. Morgan were acting within the scope of their employment, particularly as to whether the movement of the vehicles during the check in process was a necessary incident to their work, when the accident occurred. While the facts are largely uncontested,

reasonable persons could differ in their conclusion based on these facts and inferences there from, and therefore, it is not appropriate for summary judgment but rather an issue for the jury. *Felts v. Seaboard Coast Line Railroad Co.*, 409 U.S. 926 (1972) ("The question whether the plaintiff was an employee of the carrier turns on factual elements, to be resolved by the jury under appropriate instructions.") (citing *Baker v. Texas & P. R. Co.*, 359 U.S. 227 (1959); *Goldwater v. Metro-North Commuter R.R.*, 101 F.3d 296, 298 (2d Cir. 1996) ("Normally, whether an employee is acting within the scope of employment is a question 'to be resolved by the jury from all the surrounding circumstances.'") (quoting *Gallose v. Long Island R. Co.*, 878 F.2d 80, 84 (2d Cir. 1989).

### 3.   Negligence as a matter of law and whether comparative negligence of plaintiff is barred

If at trial it was found that F.E.L.A. applied then the issue of negligence per se would be applicable.  The court has already decided that Mr. Schipper is not entitled to judgment as a matter of law as to liability based on the scope of employment issue. Nonetheless, the court discusses Mr. Schipper's negligence per se and comparative negligence arguments and decides that there is no evidence that the necessary statutory or regulatory violation has occurred in this case.  The theories that BNSF was negligent per se and that comparative negligence principles shall not apply in this case are without merit.

### a.  Plaintiff's argument in his Motion for Partial Summary Judgment

In Plaintiff's Motion for Partial Summary Judgment, Mr. Schipper argues that BNSF violated its internal safety rules (BNSF General Code of Operating Rules 1.6 and

1.9) and "by extension" violated 49 U.S.C. §§ 21106 and 21103.  Mr. Schipper argues

that the alleged violations constitute negligence per se under F.E.L.A., so the court must

find BNSF was negligent as a matter of law.[4]  If the court were to find that a statute was

violated, Mr. Schipper could not be found to have been guilty of contributory negligence

or to have assumed the risks of his employment.  45 U.S.C. §§ 53 and 54.  The logic of

this argument and the basis on which Mr. Schipper brings the allegation that a statute or

regulation was violated is far from apparent to this court.

### b.  Case law related to negligence per se in a F.E.L.A. action where there is a violation of a statute or regulation

"In an FELA action, the violation of a statute or regulation . . . automatically

constitutes breach of the employer's duty and negligence per se and will result in liability

if the violation contributed in fact to the plaintiff's injury."  *Walden v. Illinois Central

Gulf R.R.*, 975 F.2d 361 (7th Cir. 1992) (discussing defendant's violation of Section

220.49 of the Federal Railroad Administration Radio Standards and Procedures, 49

---

[4] Mr. Schipper argues that his motion for summary judgment based on negligence per se was unopposed by BNSF.  BNSF filed a memorandum in opposition but did not address specifically the plaintiff's argument that BNSF was negligent per se. (doc. 70). Instead, BNSF focused its memorandum on the scope of employment.  Nonetheless, even if the negligence per se claim is considered unopposed, Mr. Schipper must still meet the burden to show that no material facts are in dispute and that he is entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56(c).  *Reed v. Bennett*, 312 F.3d 1190 (10th Cir. 2002) (reversing and remanding case in which district court relied on Kansas local rule to grant unopposed motion for summary judgment; Tenth Circuit held that standard under Rule 56(c) must still be met by the moving party regardless of whether the motion is opposed or unopposed).

C.F.R. § 220.49, which requires that engines be stopped after radio communications are interrupted).

### c. Statutes barring claims of assumption of risk and contributory negligence where there is a violation of a statute enacted for the safety of employees

Chapter 45, section 53, United States Code, relates to apportionment of damages in a F.E.L.A. case and states: . . .no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the *violation* by such common carrier *of any statute* enacted for the safety of employees contributed to the injury or death of such employee." (Emphasis added).

Chapter 45, section 54, United States Code, relates to assumption of risk in a F.E.L.A. case and states: ". . . no employee shall be held to have assumed the risks of his employment in any case where the *violation* by such common carrier *of any statute* enacted for the safety of employees contributed to the injury or death of such employee." (Emphasis added).

Section 54a expands the plain meaning of "statute" in sections 53 and 54: "[a] regulation, standard, or requirement in force, or prescribed by the Secretary of Transportation under chapter 201 of Title 49, or by a State agency that is participating in investigative and surveillance activities under section 20105 of Title 49 is deemed to be a statute under sections 53 and 54 of this title."

### d. Analysis of Plaintiff's argument

Plaintiff cites Chapter 49, United States Code, sections 21106 and 21103, and Appendix A to 49 C.F.R. Part 228 in support of his argument.

Section 21103 imposes limits on duty hours of train employees.

(a) General.--Except as provided in subsection (c) of this section, a railroad carrier and its officers and agents may not require or allow a train employee to remain or go on duty--

> (1) unless that employee has had at least 8 consecutive hours off duty during the prior 24 hours; or
> (2) after that employee has been on duty for 12 consecutive hours, until that employee has had at least 10 consecutive hours off duty.

(b) Determining time on duty.--In determining under subsection (a) of this section the time a train employee is on or off duty, the following rules apply:

> . . .
> (4) Time spent in deadhead transportation to a duty assignment is time on duty, but time spent in deadhead transportation from a duty assignment to the place of final release is neither time on duty nor time off duty.

. . . .

Similarly, Appendix A to 49 C.F.R. Part 228 expands on the definitions of what is considered on duty time in consideration of work hours limits for train employees. The scope of Part 228 is set forth in 49 C.F.R. §228.1:

This part—
> (a) Prescribes reporting and record keeping requirements with respect to the hours of service of certain railroad employees; and
> (b) Establishes standards and procedures concerning the construction or reconstruction of employee sleeping quarters.

Mr. Schipper has not shown how this statute or regulation has been violated and it appears to be wholly irrelevant to this case. Mr. Schipper points to the language of what was considered on duty time for transportation to and from an assignment in §

21103(b)(4).  As evidenced by the language of the regulation and statute, as well as the scope of Part 228, these are unrelated to any claims made by Mr. Schipper.  He does not allege, for example, that the employees were on duty for an amount of time that would violate that statute or any other relevant claim. *Cf. In re Denet Towing Service, Inc.*, 1999 WL 569520 (E.D. La. Aug. 2, 1999) ("Plaintiffs contend that Falcon overworked Littleton in violation of the Hours of Service Act, 49 U.S.C. § 21103 (1997), which provides, among other things, that a railway employer may not require a railway employee to remain on duty 'unless ... after that employee has been on duty for 12 consecutive hours ... that employee has had at least 10 consecutive hours off duty.'" (quoting 49 U.S.C. § 21103(a))). Instead, it seems that Mr. Schipper is confusing an alleged violation of this statute with whether this statutory language is applicable in an analysis of whether an employee is acting within the scope of his employment.  The court, therefore, finds that Mr. Schipper has not carried his burden to show that BNSF violated this statute or regulation.

The other statutory section cited by Mr. Schipper, section 21106, provides limitations on employee "sleeping quarters" and states:

A railroad carrier and its officers and agents--

(1) may provide sleeping quarters (including crew quarters, camp or bunk cars, and trailers) for employees, and any individuals employed to maintain the right of way of a railroad carrier, only if the sleeping quarters are clean, safe, and sanitary and give those employees and individuals an opportunity for rest free from the interruptions caused by noise under the control of the carrier

Here, the injury did not occur in "sleeping quarters," but in a parking lot. Presumably, Mr. Schipper is arguing that sleeping quarters should include this hotel parking lot and because the collision occurred in that parking lot, the railroad violated its statutory duty to maintain safe sleeping quarters. This argument is meritless. "Indeed, the absence of hotels and motels in the list of specific examples [in section 21106] suggests that 'sleeping quarters' only refers to railroad-owned or operated facilities. 'Crew quarters, camp or bunk cars, and trailers' are all lodgings typically owned or operated by railroads. According to the canon of *ejusdem generis*, the general term should be defined in light of the specific examples provided. Thus, while 'sleeping quarters' can refer to more than "crew quarters, camp or bunk cars, and trailers," it only refers to accommodations that, like them, the railroad owns or operates." *California State Legislative Bd., United Transp. Union v. Dep't of Transp.*, 400 F.3d 760, 764 (9th Cir. 2005) (internal citation omitted). Because the statute does not apply to hotels and motels, Mr. Schipper has not shown that this statute was violated or even applicable to the facts of this case. Even if this argument were valid, whether sleeping quarters were clean, safe, and sanitary are questions of fact.

Moreover, the court finds that Mr. Schipper's argument that a violation of BNSF General Code of Operating Rules 1.6 and 1.9 is "by extension" a violation of 49 U.S.C. §§ 21103 or 21106 is illogical. Mr. Schipper argues that the GCOR Rules 1.6 and 1.9 effectuate § 21106 but does not explain how this is so. Section 21106 relates to safety of employer maintained sleeping quarters, not including hotels, whereas Rule 1.6 relates to

employee conduct and 1.9 relates to respect for the railroad company.[5]  He also does not

state how § 21103, related to limitations on hours of service by train employees, is related

to the internal rules.

In his reply, Mr. Schipper cites *Schmitz v. Canadian Pacific Ry. Co.*, 2006 WL

3488846 (E.D. Wis. Dec. 4, 2006), as support for the notion that the internal safety rules

are incorporated into the federal statutes and regulations.  In that case, the court found

that the railroad was negligent per se based on a violation of the railroad's internal safety

rule.  It explained that the violation of the internal safety rule was also a violation of 49

---

[5]  The General Code of Operating Rules sets forth in part 1.0 "General Responsibilities."  Mr. Schipper relies on the following sections:

**1.6   Conduct**
Employees must not be:
1. Careless of the safety of themselves or others.
2. Negligent.
3. Insubordinate.
4. Dishonest.
5. Immoral.
6. Qaurelsome.
        or
7. Discourteous.

Any act of hostility, misconduct, or willful disregard or negligence affecting the interest of the company or its employees is cause for dismissal and must be reported.  Indifference to duty or to the performance of duty will not be tolerated.

**1.9   Respect of Railroad Company**
Employees must behave in such a way that the railroad will not be criticized for their actions.

C.F.R. §§ 214.313 and 214.311,[6] which "mandate that railroads and their roadway workers comply with their own safety rules." [7]   That case is distinguishable.   The statutory and regulatory sections cited by Mr. Schipper, 49 U.S.C. §§ 21103, 21106 and 49 C.F.R. Part 228, do not mandate or even discuss whether the railroads should comply with their own safety rules.   They, therefore, do not indicate or mandate that the railroad's internal rules are incorporated or must be complied with based on federal law.

Moreover, the court finds no support for the argument that a violation of internal safety procedures themselves constitutes negligence per se in the F.E.L.A. context. Instead, the language in relevant case and statutory law limit this to regulations and statutes. *See Walden*, 975 F.2d at 364 (discussing F.E.L.A. negligence per se where there is a violation of a "statute or regulation" but not discussing any internal safety rule);   45 U.S.C. § 54a ("A regulation, standard, or requirement *in force, or prescribed by the Secretary of Transportation* under chapter 201 of Title 49, or *by a State agency* . . . under

---

[6] Mr. Schipper does not cite to 49 C.F.R. §§ 214.313 and 214.311 in his motion or reply. Mr. Schipper likely did not cite the regulations cited in *Schmitz* because they do not apply to the facts of this case.  The purpose of that regulatory section is to "prevent accidents and casualties caused by moving railroad cars, locomotives or roadway maintenance machines striking roadway workers or roadway maintenance machines," a context inapplicable to the facts of this case.  *See* 49 C.F.R. § 214.301.

The only regulatory section that he cites is in 49 CFR Part 228, which expands on the notion of what time spent in transportation is considered on or off duty as set forth in 49 U.S.C. § 21103.  As this court previously explained, there was no statutory violation based on the language of that statute, and likewise, the facts do not show a violation of the corresponding federal regulations.

[7] Nothing in this court's discussion of *Schmitz* is to show an approval or adoption of that court's holding in that case because, as discussed, the facts of that case are distinguishable, so this court need not make that determination.

section 20105 of Title 49 is deemed to be a statute under sections 53 and 54 of this title."

(Emphases added)).[8]

This court finds that Mr. Schipper has not shown how the statutes he cites either incorporate the internal safety rules or how BNSF has violated those statutes. Where there is no violation of a statutory or regulatory duty, then negligence per se is inapplicable and the provisions barring contributory negligence and assumption of risk are also inapplicable. Issues of negligence, comparative negligence, and assumption of risk are for the jury. Mr. Schipper's Motion for Summary Judgment is denied.

**IT IS HEREBY ORDERED** that all BNSF's, Mr. Morgan's, and Mr. Schipper's summary judgment motions (docs. 47, 55, 63, respectively) are **DENIED**.

**IT IS SO ORDERED.**

Dated this 16th day of July, 2008.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

---

[8] Alternatively, the court also is unconvinced that whether Rules 1.6 and 1.9 have been violated is a matter of law. Whether one is negligent, careless, or behaves in such a way that the railroad will not be criticized for their actions is a matter for the trier of fact. *See supra* note 5 for rule language.